UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN HICKS,

                Plaintiff,                          Civil Action No. 10-cv-13643

        v.                                District Judge Victoria A. Roberts
                                             Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 14]**

Plaintiff Susan Hicks ("Plaintiff" or "Claimant") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions, (Dkts. 9, 14) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 3, 11).

**I. RECOMMENDATION**

For the reasons set forth below, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that Plaintiff requests remand, that Defendant's Motion for Summary Judgment be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be REMANDED.

## II.  REPORT

### A.  Procedural History

Plaintiff alleges that she became unable to work on August 28, 2004.  (Tr. 18, 42.)  The Commissioner denied Plaintiff's disability application on April 7, 2006. (Tr. 16, 37-40.)  Plaintiff then filed a request for a hearing, and on August 12, 2008, she appeared with her present counsel before Administrative Law Judge ("ALJ") John L. Christensen, who considered the case *de novo*. (Tr. 16-23.)  In an October 14, 2008, decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 16-23.)  The ALJ's decision became the final decision of the Commissioner on July 8, 2010, when the Appeals Council denied Plaintiff's request for review.  (Tr. 3.)  Plaintiff filed this suit on September 13, 2010.  (Dkt. 1.)

### B.  Background[1]

Plaintiff was 28 years old on the alleged disability onset date of August 28, 2004.  (*See* Tr. 338.)  Plaintiff has an associate's degree in business administration and a certificate as a nursing assistant, and, in 2006, was seven classes shy of a bachelor's degree in business management.  (Tr. 208, 338-39.)  She has held a number of jobs in the past, including, chart provider, clerical assistant, computer assistance technician, nursing assistant, and technical associate for a phone company. (Tr. 340-41.)

---

[1]The only issue raised on appeal is whether the ALJ erred in omitting a specific "concentration, persistence, or pace" limitation in his RFC assessment of Plaintiff and, similarly, in the hypothetical given to the VE.  As such, only the medical evidence and testimony relevant to Plaintiff's concentration, persistence, or pace limitation is presented in this section.

2

### 1. Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff testified about pain in her back, right shoulder (her dominant arm), and right leg and hip.  (Tr. 337, 343.)  She also testified to having migraine headaches and some depression and anxiety.  (Tr. 345-47.)  Regarding her shoulder, back, hip, and leg pain, Plaintiff testified that she can only remain on her feet for about five minutes, and that she does not "use [her] right hand because . . . it releases on its own."  (Tr. 344-45.)  In an undated form, Plaintiff provided that she took Gabapentin, Vicodin, Ultram, and Celebrex, for pain.  (Tr. 60.)  As to her migraines, Plaintiff testified that they were part of the reason she stopped working in August 2004, but the ALJ noted that in August 2007 she received treatment and had a "70 percent decrease in [migraine] frequency."  (Tr. 346-47.)  Plaintiff basically agreed with the ALJ's assertion, stating that she still has migraines but with the medication, "they're doing all right" and are not as frequent.  (Tr. 347.)  Plaintiff attested that she also takes medication for her depression and anxiety (Cymbalta), and described her symptoms related to those two mental conditions as: "I'm just tired and frustrated and I think mine is because I want to be able to work and I don't want to be in pain."  (Tr. 60, 346.)

Regarding the sole issue appealed to this Court – that the ALJ did not properly include a "concentration, persistence, or pace" limitation – Plaintiff testified that she has problems focusing "because of all the fatigue I have dealing with the medication, all the medication and everything that I'm on."  (Tr. 342.)  She also described side effects of the medication as making her "really tired and sleepy."  (Tr. 343.)  As to Plaintiff's alleged falling asleep while driving (discussed below) Plaintiff testified that people who have treated her said that they did not know if her medication was the cause and that she needed "additional testing."  (Tr. 343.)

3

### 2. *Plaintiff's Self-Completed Disability Application Forms*

At the time of the hearing before the ALJ, Plaintiff was raising two of her children and was obtaining guardianship for the third. (*See* Tr. 337.) In a self-completed daily activity sheet, Plaintiff provided that she woke at 9:00 a.m., makes her bed, sorted laundry, ate dinner around 5:00 p.m., and then, between 7:00 p.m. and midnight, watched TV, with some checking of email and sleeping. (Tr. 47.) On her self-completed "Function Report" Plaintiff provided that she gets her children off to school with the assistance of her mother. (Tr. 78.) She then comes home and rests, does as many household chores as she can before she begins to hurt too bad, picks up her son from school, rests a little, and then picks up her other son from school. (Tr. 78.)

### 3. *Medical Evidence*

The medical evidence related to the issue in this case, Plaintiff's alleged concentration problems, is sparse. The Court first summarizes the medical evidence surrounding Plaintiff's migraines and sleepiness, and then discusses a psychiatric evaluation and a psychiatric review completed by two state agency doctors.

#### a. *Plaintiff's Migraines and Sleepiness*

In January 2004, Plaintiff twice went to the Emergency Care Center at Covenant Healthcare in Saginaw, Michigan with complaints of headaches. (Tr. 181, 185.) At the first visit, she complained of headache pain in the four-out-of-five range accompanied by nausea, but reported no visual disturbance, balance change, or vomiting during her migraines. (Tr. 185.) She was treated with Demerol and Phenergan, which provided her "90% relief of her headache." (Tr. 186.) Plaintiff returned about a week later, however, with complaints of a week-long "migraine type headache." (Tr. 181.) Plaintiff described a "spinning sensation" which is "exacerbated any time she moves,"

4

but when she is still, she had no symptoms. (*Id.*) She reported that "[s]he has been having trouble at work, . . . that she has been staggering when she is walking secondary to the dizziness and people at work were noticing, so she became concerned and came in." (*Id.*) A CT scan returned negative, and Plaintiff was treated with Antivert and Tylenol. (Tr. 182.)

A November 10, 2005 medical record provides that Plaintiff was treated for blurry vision and dizziness. (Tr. 234.) That same day, she had a head CT scan which returned normal. (Tr. 248.)

On June 20, 2006, Plaintiff presented with throbbing on the right side of her head, recurring three times-a-day with a four-out-of-five pain level. (Tr. 228.) She also reported severe blackouts, vomiting, and dizziness. (*Id.*) Although the handwriting is difficult to decipher, it appears that she was treated with various medications. (*Id.*)

In March 2007, Plaintiff presented with dizzy spells and apparently reported that she drove "off the road." (Tr. 272.) She had a head CT scan for "memory loss – presyncope," but the scan returned normal. (Tr. 263.)

On May 30, 2007, Plaintiff saw Dr. Iftikhar A. Khan, a neurologist. (Tr. 280-81.) At the time, Plaintiff was 31 years old, and presented with "complaints of frequent headaches and some other episode of so-called transient altered responsiveness." (Tr. 280.) She told Dr. Khan that she had been experiencing headaches for about three years occurring three or four times a week. (*Id.*) Regarding Plaintiff's sleepiness, Dr. Kahn noted,

> She also complains about some episodes such as she felt tingling on the face and then she went off the road. It is not clear if there was any alteration in responsiveness and this was an unwitnessed episode. . . . She also reports that there was some time when she appears somewhat spacy, does not interact well, does not respond quickly, and those have been witnessed by her mother. There is reportedly no drooling, fall, injuries or any collapse, etc.

5

(*Id.*) Dr. Khan treated Plaintiff's migraines with Topamax. (Tr. 281.) He also noted that Plaintiff "is morbidly obese with the symptom of daytime sleepiness and she is likely to have a sleep apnea. Therefore she will require a sleep study. . . . Regarding her complaint related to some episode of altered responsiveness, more likely those are sleep attacks." (Tr. 281.)

On August 30, 2007, Plaintiff had a follow-up visit with Dr. Khan. She reported that her headaches "have probably 70% decreased in frequency." (Tr. 279.) Dr. Khan noted, however, "She is unable to get a sleep study from an insurance standpoint and she does have a history snoring, unrestful sleep and so on." (*Id.*) In September 2007, Plaintiff presented with "daytime fatigue," and stated that she falls asleep at stop signs. (Tr. 266.) The medical provider's assessment stated that Plaintiff needed a sleep study. (*Id.*)

### b. State Agency Examiner Evaluations

On January 26, 2006, Edward Tava, Ed.D. completed a mental status exam of Plaintiff on behalf of the State Disability Determination Service ("DDS"). (Tr. 208-12.) Plaintiff mainly reported her physical problems and migraines, but also reported that, while she was not depressed, she was "very frustrated." (Tr. 208.) Plaintiff was not involved in counseling at the time. (*Id.*) Dr. Tava found that Plaintiff's "overall motor activities tend to be a bit lethargic," that her overall affect was "very anxious, but also somewhat depressed as well." (Tr. 210.) He also noted that while Plaintiff appeared to possess "potentially adequate intelligence," "her thoughts seem somewhat disorganized." (*Id.*) Plaintiff was able to repeat 5 digits forwards and backwards; recall all three objects Dr. Tava presented; list a number of past presidents, cities, and famous people; successively subtract seven from 100; and understood the idiom "the grass is greener on the other side"; and knew what to do if she found a stamped, addressed envelope. (Tr. 210-11.) Dr. Tava diagnosed Plaintiff

6

with "Adjustment Disorder with mixed Anxiety and Depressed Mood" and assigned Plaintiff a

Global Assessment Function ("GAF") score of 62.  (Tr. 212.)[2]

On March 30, 2006, Zahra Yousuf, M.D., completed a Psychiatric Review Technique Form

for the State DDS.  (Tr. 213-225.)  Dr. Yousuf also found that Plaintiff had the impairment of

"adjustment disorder with mixed anxiety and depressed mood" but it was not a "severe" impairment.

(Tr. 213-16.)  Regarding the four "B Criteria" associated with the Listings for mental impairments,

Dr. Yousuf found that Plaintiff had "mild" restrictions in both daily living and maintaining

concentration, persistence, or pace.  (Tr. 223.)  According to Dr. Yousuf, Plaintiff had no limitation

in maintaining social functioning, and no extended duration episodes of decompensation.  (Tr. 223.)

Dr. Yousuf's "B Criteria" findings were made in view of Dr. Tava's evaluation.  (Tr. 225.)

### 4. Vocational Expert's Testimony

Stephanee Leech, a vocational rehabilitation counselor, testified as a Vocational Expert

("VE") at the hearing before the ALJ.  (Tr. 348-352.)  The ALJ asked her to respond to the following

hypothetical,

> I want you to assume we have an individual the same age, education,
> and work experience as the Claimant.  That individual has the
> following [RFC].  Sedentary work with a sit/stand option, no
> repetitive or overhead reaching with the right upper extremity.  No
> exposure to unprotected heights or any variety of hazardous

---

[2]A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed., Text Revision 2000).  It ranges from 100 (superior functioning)  to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id*. at 32.  A GAF of 61 to 70 signals "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id*. at 34.

> machinery.  Must work in a well controlled environment with no
> exposure to extreme temperatures or humidity.  No exposure in
> confined spaces to dust, odors, fumes or gases.  *Simple, routine tasks*
> *only in a low stress environment.  By that I mean minimal changes in*
> *a work place setting.*

(Tr. 350 (emphasis added).)  The VE responded that someone with that RFC would be able to work

as an unskilled office clerk  (1,800 jobs), surveillance system monitor (1,500 jobs), or unskilled book

keeping, accounting, and auditing clerk (1,900 jobs).  (Tr. 350-51.)

The ALJ then asked the VE to consider a second, more limited, hypothetical individual: "I

want to add [to my prior hypothetical] that, as a result of pain, fatigue secondary to pain and

medication required for pain.  Could that individual sustain sufficient concentration, persistence and

pace to do even simple, routine tasks on a regular continuing basis[?]" (Tr. 351.)  The VE replied

that the hypothetical individual would be unable to work.  (Tr. 351.)

### C.  Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage

earners who become disabled prior to expiration of their insured status) "are available only for those

who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines

"disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are

8

denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

See 20 C.F.R. §§ 404.1520, 416.920; see also Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." Preslar v. Sec'y of Health and Human Servs., 14 F.3d 1107, 1110 (6th Cir. 1994).

**D. The Administrative Law Judge's Findings**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 28, 2004 — Plaintiff's alleged onset date. (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: "history of migraine headaches, osteoarthritis in the knees, history of asthma, right shoulder pain and an adjustment disorder." (Id.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 19-20.) As relevant on appeal to this Court, between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform "simple routine tasks in a

9

low stress environment (by that I mean minimal changes in workplace settings)." (Tr. 21.) At step four, the ALJ found that Plaintiff could not perform any past relevant work, which, non-exertionally, the ALJ classified as "semi-skilled." (Tr. 22.) At step five, the ALJ relied on VE testimony in response to his first hypothetical, and found that work existed in significant numbers that Plaintiff could perform: office worker (1,800), security systems monitor (1,500) and bookkeeper assistant (1,900). (Tr. 23.)

### E.  Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d

at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

## F. Analysis

Plaintiff has appealed only one issue to this Court: whether the ALJ erred by making the Step-Three finding that Plaintiff suffers from "moderate difficulties" in concentration, persistence, or pace ("CPP") while excluding a corresponding limitation from his hypothetical and RFC assessment. (Pl.'s Mot. Summ. J. at 7, 8, 11-12.) Plaintiff asserts that the ALJ's limitation of "simple routine tasks in a low stress environment (by that I mean minimal changes in workplace settings)" does not adequately account for Plaintiff's "moderate" limitation in CPP.

This is a frequently litigated issue in the Eastern District of Michigan. The Court agrees with Plaintiff to the extent that a hypothetical simply limiting a claimant to "simple routine tasks" may,

11

in some instances, fail to capture a claimant's moderate limitation in "concentration, persistence, or pace" because the difficulty of a task is not equivalent to the difficulty of staying on task. *See e.g.*, *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%-30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 . . . . Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").

However, not all of Plaintiff's cases are on point. Among District authorities, Plaintiff primarily relies on *Thomczek v. Chater*, No. 94-74011, 1996 WL 426247 (E.D. Mich. Jan. 5, 1996); *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698 (E.D. Mich. 2003); *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842 (E.D. Mich. 2007). The first two cases are readily distinguishable. Here, only the ALJ – not any psychiatrist, physician, or medical professional – made a determination that Plaintiff has "moderate" difficulties in CPP. This separates this case from *Thomczek*, 1996 WL 426247, at *2 (PRTF completed by someone other than ALJ (presumably a State DDS physician) found that the claimant "often" had concentration limitation) and *Bielat*, 267 F. Supp. 2d at 700 (State DDS physician found that the claimant had a "marked" (as opposed to "moderate") limitation in ability to concentrate).

But *Benton*, authored by the District Judge in this case, is squarely on point and the Commissioner makes no effort to distinguish it. In *Benton* the ALJ, rather than a physician, determined that Plaintiff had moderate difficulties in CPP based upon her medications. 511 F. Supp.

12

2d at 848 ("Defendant asserts that the ALJ was not interpreting the opinion of a physician or any other medical professional that Plaintiff had a "moderate" concentration limitation. Instead, Defendant states the issue is what constitutes a "moderate" concentration limitation according to the ALJ himself.") Similarly here, no physician opined that Plaintiff has moderate difficulties in CPP – in fact one physician found that Plaintiff only had "mild" limitations in CPP – but the ALJ nonetheless determined, based on Dr. Tava's evaluation, that Plaintiff has moderate difficulties in CPP.  Yet, problematically, in both *Benton* and in this case the ALJ did not adequately include his own CPP limitation in his RFC assessment or hypothetical to the VE.  Instead the ALJ in this case limited Plaintiff to "simple routine tasks in a low stress environment" which is directly on par with the ALJ's limitation of "simple, routine, repetitive work" in *Benton*.  Finally, the jobs the VE found Plaintiff capable of – office worker, security systems monitor, and bookkeeper assistant – are similar to the jobs the *Benton* VE found the plaintiff there able to perform: bench assembler, parking lot attendant, surveillance system monitor, and cashier.  The Commissioner makes no argument to the contrary.  In *Benton*, the District Court ruled:

> Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform [simple routine tasks].  However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations. "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence, and pace for this Court to determine the number of jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question.

*Id.* at 849.

13

Although *Benton* controls in this case, this Court acknowledges the authorities cited by the Commissioner.  As a general matter, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment:

> To be sure, all of the ALJ's findings, including those summarized on a PRTF, must be harmonized and incorporated into the hypothetical questioning of the VE. Yet, a particular assessment on a PRTF does not mandate a rigid checklist of restrictions that must be included in this questioning.  Rather, a case-by-case determination is required, under which the ALJ must translate the broad PRTF classifications into a set of specific limitations that are properly rooted in the administrative record.

*Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (finding that "unskilled" work limitation in RFC was sufficient to account for ALJ's PRTF finding that claimant "often" experiences CPP issues); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks.  Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

In fact, the Court notes that there is a line of CPP cases within this District that do not remand for the ALJ to include a "moderate" CPP limitation where a medical professional makes a finding that the claimant has "moderate" difficulties in CPP (e.g., on a Psychiatric Review Technique Form) but ultimately concludes that the claimant can work.[3]  But such facts are not

---

[3]*See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (finding that substantial evidence supported ALJ's decision where, although a psychiatrist found "moderate" limitations in claimant's ability to maintain attention and concentration for extended periods, the same psychiatrist also noted the claimant's daily activities and ultimately concluded that the claimant was capable of performing simple tasks on a sustained basis);

14

*Young v. Comm'r of Soc. Sec.*, No. 10-11329, 2011 WL 2601014, at *10 (E.D. Mich. May 23, 2011) (Binder, M.J.) *adopted by* 2011 WL 2600599 (Duggan, J.) ("Although Plaintiff correctly cites the moderate limitations noted in the assessment, Plaintiff fails to mention that the same assessment also concluded that Plaintiff is 'capable of unskilled work.'");

*Taylor v. Comm'r of Soc. Sec.*, No. 10-12519, 2011 WL 2682682, at *8 (E.D. Mich. May 17, 2011) (Michelson, M.J.) *adopted by* 2011 WL 2682892 (Edmunds, J.) ("[T]his Court finds that Dr. Marshall's findings that Plaintiff has moderate limitations in concentration, persistence, and pace have to be considered in conjunction with his ultimate conclusion (twice reached) that, despite the concentrational limitations, Plaintiff could perform unskilled work on a 'sustain[ed] basis.'");

*Seach v. Comm'r of Soc. Sec.*, No. 10-11741, 2011 WL 1792666 at *8 (E.D. Mich. Apr. 6, 2011) (Randon, M.J.) *adopted by* 2011 WL 1792706 (Zatkoff, J.) ("The undersigned concludes that the ALJ's determinations regarding Plaintiff's mental impairments are fully supported by the substantial evidence in the administrative record. In this matter, the State Agency examiner specifically stated that Plaintiff's 'psychological limitations do not appear to interfere with potential for work activities that are simple in nature. [Plaintiff] retains the capacity for simple tasks on a sustained basis.'");

*Sutherlin v. Comm'r of Soc. Sec.*, No. 10-10540, 2011 WL 500212, at *3 (E.D. Mich. Feb. 8, 2011) (Cook, J.) ("A State [DDS] medical consultant had determined that, despite [plaintiff's] moderate difficulty in maintaining concentration, persistence, or pace, (1) these limitations did not interfere with his ability to perform tasks that were simple in nature and (2) he retained the ability to perform 'one to two' step tasks on a sustained basis.");

*Stokes v. Comm'r of Soc. Sec.*, No. 09-12722, 2010 WL 4063886, at *11 (E.D. Mich. July 23, 2010) (Majzoub, M.J.) *adopted by* 2010 WL 4063744 (Lawson, J.) ("Plaintiff argues that a limitation to 'simple' work does not account for deficiencies in concentration. . . . [But] except for Dr. Ballard's opinion, there is no evidence of record that Plaintiff would have more than a moderate limitation in concentration, persistence or pace or that Plaintiff's limitations would manifest in the 'failure to complete tasks in a timely manner.' The ALJ did not find that Plaintiff had a marked limitation in concentration, persistence or pace or would often suffer deficiencies this area. There is also evidence of record that despite the limitations, Plaintiff could perform simple, unskilled work and even Dr. Ballard opined that Plaintiff's limitations with respect to simple one or two step job instructions were less severe than his limitations related to technical and/or complex job instructions.");

*Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (Ludington, J.) ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work.");

*Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008)

15

present in this case. And while an analogy might be made between those cases and ones, like this case, where the ALJ himself makes a finding of "moderate" limitations in CPP but decides such a limitation is unnecessary when crafting his hypothetical and RFC assessment, there is authority that appears to be to the contrary. *See Benton*, 511 F. Supp. 2d at 849; *Badour v. Comm'r of Soc. Sec.*, No. 10-13280, 2011 WL 3320872, at *8 (E.D. Mich. July 18, 2011) *adopted by* 2011 WL 3300673 (E.D. Mich. Aug. 2, 2011) ("Dr. Hill's finding that Plaintiff could perform one to two step tasks was apparently based on his finding that Plaintiff experienced mild concentrational limitations. The ALJ, relying on psychological treating records post-dating Dr. Hill's assessment, acknowledged a greater of degree of limitation than that found by Dr. Hill. The reversible error lies in her failure to incorporate such limitations into the hypothetical."); *Allen v. Comm'r of Soc. Sec.*, No. 09-13503, 2010 WL 3905983 at *5 (E.D. Mich. June 2, 2010) *adopted by* 2010 WL 3905194 (E.D. Mich. Sept. 30, 2010) ("The problem here is that the ALJ found explicitly that Plaintiff experienced moderate deficiencies in concentration, persistence, and pace. Despite this determination, he made no reference whatsoever to concentrational limitations in the hypothetical question. . . . This Court is unaware of any case law supporting Defendant's contention that the hypothetical limitation of 'unskilled work,' with nothing more, would be sufficient to address moderate concentrational deficiencies.").[4]

———————————

(Whalen, M.J.) *adopted by* 2008 WL 2478325 (Lawson, J.) ("Plaintiff's argument for the selective adoption of [the State DDS physician's] 'moderate' limitations without considering his ultimate conclusion [that she could work] would amount to a distortion of the record. Likewise, [the State DDS physician's] observation that Plaintiff experienced a moderately impaired ability to be punctual and complete her work without psychologically based interruptions must be analyzed alongside his conclusion that Plaintiff was capable of a limited range of work.").

[4]It appears that the hypothetical in *Allen* did not actually include the term "unskilled" but that the jobs the VE prescribed were unskilled.

Accordingly, on the facts of this case, this Court recommends remand.

## G. Conclusion

For the foregoing reasons, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that Plaintiff requests remand, that Defendant's Motion for Summary Judgment be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be REMANDED.  On remand, the ALJ should adequately account for his determination that Plaintiff had "moderate" difficulties in "concentration, persistence, or pace" in his RFC and obtain additional VE testimony if necessary.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service

17

of the response.  E.D. Mich. LR 72.1(d)(3), (4).


                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  August 30, 2011


                        CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 30, 2011.


                                        s/Jane Johnson
                                        Deputy Clerk